UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James N. Ziebell,

    Plaintiff,

v.

American Express National Bank, f/k/a
American Express Bank, FSB; Experian
Information Solutions, Inc.; Equifax
Information Services LLC; and Trans Union
LLC;

    Defendants.

Case No. 18-cv-2038 (JNE/ECW)
ORDER

Plaintiff James N. Ziebell sued American Express National Bank ("AMEX") in state court, under the Fair Credit Reporting Act ("FCRA"), concerning reports made about his AMEX credit card account.[1] The case was removed to federal court. AMEX now moves to compel arbitration and stay this action pending arbitration. AMEX claims that Ziebell agreed to a broad and all-encompassing arbitration agreement when he used his AMEX credit card. Ziebell opposes this motion for three reasons. First, he disputes that he entered into this agreement. Second, he argues that AMEX waived its right to arbitrate his claim. Third, he argues that the arbitration agreement is unenforceable. For the reasons below, the Court grants AMEX's motion to compel arbitration.

---

[1] The Court notes that Ziebell's Complaint also asserts claims under FCRA against Defendants Experian and Equifax. Ziebell's claims against Experian and Equifax remain pending in this case as no party has argued that these claims are subject to arbitration.

1

## BACKGROUND

AMEX contends that Ziebell opened a Costco TrueEarnings Card account ending in 1000 on March 31, 2006. Pursuant to AMEX's standard business practices, AMEX mailed Ziebell his credit card with a copy of the Cardmember Agreement ("Agreement") when he opened the account. AMEX attached the Agreement to its motion.

The Agreement includes an Arbitration Provision, which states: "Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision. . . ." Herr Decl., ECF No. 39, Ex. 1 at 3. Additionally, the Arbitration Provision defined "Claim" broadly to encompass "claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity" and includes, "without limitation":

> any claim, dispute or controversy that arises from or relates to (a) any of the accounts created under any of the Agreements, or any balances on any such accounts, (b) advertisements, promotions or oral or written statements related to any such accounts, goods or services financed under any of the accounts or the terms of financing . . . .

*Id.* at 2. The Arbitration Provision further provides that it is governed by the Federal Arbitration Act ("FAA"). *Id*. at 3. Additionally, AMEX asserts that Ziebell could have opted out of the Arbitration Provision within 45 days after his first card purchase, but that AMEX has no records indicating that he refused to accept the terms of the Arbitration Provision. Herr Decl., ECF No. 39 ¶ 7.

AMEX also asserts that Ziebell used the credit card at issue, and that his use constituted acceptance of the Agreement's terms, including the Arbitration Provision. The Agreement states that the "use" of the credit card or "the account associated with

[the] Agreement" means that Ziebell "agree[s] to the terms of [the] Agreement." Herr Decl., ECF No. 39, Ex. 1 at 1. To its reply, AMEX attached monthly credit card statements provided to Ziebell from January 2012 to December 2012. Supp. Herr Decl., ECF No. 49 ¶ 1-2. These statements show that Ziebell used the card at issue—the card ending in 1000—in March, April and May of 2012. *Id.*, Ex. A at 20, 32, 44.

However, Ziebell "den[ies] agreeing to any of the different arbitration provisions that American Express has at various times purported that [he] agreed to." Ziebell Aff., ECF No. 46 ¶ 9. Moreover, Ziebell contends that he informed a state court judge that this was not his account during a collection suit filed by AMEX in 2015 and AMEX agreed to dismiss the claim against him with prejudice. *Id.* ¶¶ 12-13. Ziebell attached the transcript from the state court proceedings to his motion.

## LEGAL STANDARD

The FAA, 9 U.S.C. §§ 1–16 (2012), governs arbitration agreements relating to transactions involving interstate commerce. The Act establishes a "federal policy favoring arbitration," requiring that courts "rigorously enforce agreements to arbitrate." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). To facilitate this purpose, the FAA permits a court to stay a case and compel the parties to arbitrate. 9 U.S.C. § 3.

Recently, the Supreme Court unanimously reaffirmed that parties can "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1272, 2019 WL 122164, at *2 (U.S. Jan. 8, 2019). But, here, the

Agreement expressly excludes arbitrating disputes about "the validity, enforceability or scope of this Arbitration Provision or the Agreements."[2]  Herr Decl., ECF No. 39, Ex. 1 at 3.  Accordingly, the Court takes up the threshold question of whether the parties agreed to arbitrate.

In deciding a motion to compel arbitration under the FAA, courts engage in a two-step inquiry to determine if the parties agreed to arbitrate the dispute: "(1) whether there is a valid agreement to arbitrate between the parties and (2) whether the dispute falls within the scope of that arbitration agreement."  *Webster Grading, Inc. v. Granite Re, Inc.*, 879 F. Supp. 2d 1013, 1018 (D. Minn. 2012).  "While a general presumption exists in favor of arbitration . . . the presumption can only be triggered by a valid arbitration agreement."  *Id.*  When engaging in the two-step inquiry, courts "apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter."  *Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999).

Under Utah law,[3] the proponent of the contract "has the burden of showing that an offer and acceptance were more probable than not."  *Sackler v. Savin*, 897 P.2d 1217, 1222 (Utah 1995).  "[I]t is a basic principle of contract law that there can be no contract

---

[2] This language in the Agreement also likely explains why neither party argues that the parties agreed to delegate threshold questions of arbitrability to an arbitrator.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1272, 2019 WL 122164, at *2 (U.S. Jan. 8, 2019) ("Under the Federal Arbitration Act, parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract.").

[3] The Agreement provides that "[t]he Agreement and [Ziebell's] Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the *State of Utah* (without regard to internal principles of conflicts of law), and by applicable federal law."  Herr Decl., ECF No. 39, Ex. 1 at 3 (emphasis added).

without the mutual assent of the parties." *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207 (Utah 1987). This necessary "meeting of minds" can be demonstrated by "conduct and circumstances as well as by verbal expression." *Radley v. Smith*, 313 P.2d 465, 467 (Utah 1957).

When motions to compel arbitration are accompanied by exhibits, declarations, and affidavits, the motions "should [be] analyzed under a standard akin to competing motions for summary judgment." *Nebraska Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 741 (8th Cir. 2014). Here, both parties submitted matters outside the pleadings for the Court to consider. Consequently, the Court applies a "summary judgment standard— viewing the evidence and resolving all factual disputes in the nonmoving party's favor" to evaluate whether there exists a genuine dispute of fact. *Id.* at 742.

## DISCUSSION

### I. Valid Arbitration Agreement

The dispute centers on the first prong of the analysis: whether there is a valid arbitration agreement. The parties attached conflicting affidavits and declarations to their motions. But for the following reasons, the Court finds that there is no genuine issue of fact that the parties entered into a valid agreement.

Under Utah law, the use of a credit card constitutes acceptance of the governing agreement if (1) "the debtor is provided with a written copy of the terms of the agreement" and (2) "the agreement provides that any use of the credit offered shall constitute acceptance of those terms." Utah Code Ann. § 25–5–4(2)(e) (2004); *see also MBNA America Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (Utah Ct. App. 2006) ("[T]he

5

Agreement contained a provision that acceptance of the Agreement's terms occurred through use of the credit card, and [defendant] undisputedly used the credit account. Therefore, [the bank]'s complaint should not have been dismissed even if the [a]greement did not contain [defendant]'s signature."). AMEX asserts the following: (1) the Agreement stated that use of the card would constitute assent to the Agreement's terms; (2) AMEX mailed a copy of the Agreement to Ziebell together with the relevant credit card, and (3) Ziebell subsequently used the card. Moreover, AMEX points out, Ziebell's affidavit does not refute any of these facts.

In response, Ziebell contends that AMEX has failed to show that he agreed to arbitration, giving rise to a genuine issue of fact. But for the reasons below, Ziebell's arguments do not persuade the Court.

First, Ziebell argues that the Agreement attached by AMEX is inadmissible under Federal Rule of Evidence ("FRE") 803(6)(E) since it lacks trustworthiness. Ziebell contends that the trustworthiness of the Agreement is belied by the fact that AMEX has provided several versions of the Agreement, each with slightly different arbitration provisions. Attempting to further discredit the Agreement, Ziebell asserts that AMEX has a "known history of faulty oversight of its operations," citing to a Consumer Financial Protection Bureau ("CFPB") consent order.

The Court disagrees and finds that the Agreement is admissible. AMEX has explained that each version of the Agreement in the record permits AMEX to update the Agreement, and so the existence of prior and/or updated versions is immaterial to the

trustworthiness of the business records. Moreover, the CFPB consent order makes no reference to AMEX's business records.

Second, Ziebell argues that AMEX has not produced business records evincing that AMEX actually sent him the Agreement. But this is unnecessary to find that a valid agreement exists. For support, AMEX attached a declaration from Keith Herr, the Assistant Custodian of Records, stating that AMEX mailed Ziebell his credit card together with a copy of the Agreement when he opened the account—pursuant to AMEX's "standard business practices." Herr Decl., ECF No. 39 ¶ 5.

In response, Ziebell asserts that Herr's declaration is inadmissible—citing FRE 602's personal knowledge requirement—because Herr does not have first-hand knowledge of AMEX mailing the Agreement to Ziebell. However, this argument has no merit. Because Herr's declaration is admissible as routine practice evidence under FRE 406,[4] personal knowledge that an organization actually acted in accordance with routine practice on a particular occasion is not required. Rather, courts have held that a declarant simply needs personal knowledge of the organization's routine practice. *See, e.g., Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1264 (10th Cir. 2012) (holding that declarations were admissible under FRE 406 because they indicated that the declarant had "personal knowledge of the standard practice for customer acceptance of terms").

---

[4] Pursuant to FRE 406, courts may admit evidence of "an organization's routine practice" to show that "on a particular occasion" the organization acted in accordance with the routine practice. Fed. R. Evid. 406; *see also Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261-62 (10th Cir. 2012) ("Courts may accept Rule 406 evidence at the summary judgment stage as providing an inference that a routine practice was actually carried out.").

7

Accordingly, Herr's declaration is admissible. In his declaration, Herr asserts that he has personal knowledge of AMEX's standard business practices. Herr then offers evidence of AMEX's standard practice to support an inference that Ziebell was sent an Agreement in accordance with AMEX's routine practice of mailing Agreements to customers who open a Costco TrueEarnings Card Account. Once this admissible evidence was offered in support of AMEX's motion, Ziebell had the opportunity to rebut it. Yet, as discussed below, Ziebell failed to do so.

Fourth, Ziebell argues that a state court judge already ruled that he did not enter into an agreement with AMEX during a collection suit related to this same account.[5] AMEX asserts in response that "[t]here is nothing in the proceedings evincing a court determination that Ziebell did not enter into the Agreement." Def.'s Reply, ECF No. 48 at 4-5.

After reviewing the transcript from the collection suit, the Court finds that AMEX's interpretation of the proceedings is more accurate. The discussion focused on whether to dismiss the claims with or without prejudice after the parties' agreed not to proceed to trial. Ziebell Aff., ECF No. 46, Ex. B at 2-4. AMEX agreed to dismiss the collection suit with prejudice because Ziebell's account "[was] such an old account." *Id.* at 3. Ziebell agreed to dismiss his counterclaim if AMEX promised to note that the collection matter was resolved in his credit file. *Id.* at 4. Although Ziebell mentioned that this account was not his, *id.*, neither the Court nor AMEX acknowledged this

---

[5] In Hennepin County court proceedings, AMEX filed a collection suit against Ziebell alleging that he had owed money on this credit card account.

assertion as the grounds for dismissal. Accordingly, Ziebell's argument is without support.

Fifth, Ziebell argues that his affidavit—which denies that he entered into an agreement to arbitrate—creates a genuine dispute of fact. *See Jenkins v. S. Farm Bureau Cas.*, 307 F.3d 741, 744 (8th Cir. 2002) ("These competing arguments, both in the form of affidavits, create a genuine issue of fact . . . ."); *see also Am. Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005) ("In cases involving lack of notice, there is often little a party can do except swear he or she did not receive the communication."). After evaluating the evidence attached to the parties' motions, the Court finds that the parties entered into a valid agreement and there is no genuine issue of fact concerning the formation of the agreement. Ziebell vaguely asserts that he did not agree to the contract, but he does not dispute AMEX's assertions that he received the Agreement and used the card—the key facts demonstrating acceptance. Consequently, this equivocal denial does not create a genuine dispute of fact with respect to acceptance.

Moreover, AMEX asserts that the Tenth Circuit rejected a similarly vague denial in *Hancock*, because plaintiffs failed to raise a genuine factual dispute. 701 F.3d at 1264-65. In *Hancock*, plaintiffs attached an affidavit in which they denied agreeing to terms of service offered by a telecommunications company. *Id*. But the Tenth Circuit, applying Utah law, upheld the district court's conclusion that "this affidavit failed to specifically dispute [d]efendants' evidence of customer acceptance of [the contract's] terms." *Id*. at 1264.

Here, too, Ziebell's affidavit fails to specifically dispute AMEX's evidence of acceptance, and consequently fails to raise a genuine issue of fact. Because Ziebell's conduct conclusively manifests his acceptance of the Agreement under Utah law, the Court enforces the Arbitration Provision. *See Khanna v. Am. Express Co.*, No. 11 Civ 6245, 2011 WL 6382603, at *3 (S.D.N.Y. Dec. 14, 2011) (finding an arbitration clause in an AMEX cardmember agreement to be enforceable under Utah law under similar facts).

## II.  Waiver

Even if the Court finds that a valid agreement exists, Ziebell argues that AMEX waived its right to arbitrate the dispute. The Court disagrees.

Even when a contractual right to compel arbitration exists, a party may waive it. *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1117 (8th Cir. 2011). The Eighth Circuit applies a "three-factor test," finding waiver when the party seeking arbitration "(1) knew of its existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions." *Id.*

Ziebell argues that AMEX waived arbitration in the present case by initiating a collection suit against Ziebell in 2015. But, for support, Ziebell only cites cases involving situations where a party filed suit and then tried to invoke an arbitration provision in the same proceedings. *See, e.g., Nicholas v. KBR, Inc.*, 565 F.3d 904, 906-08 (5th Cir. 2009) (Plaintiff, who initiated the suit, subsequently filed a motion to compel arbitration more than ten months into the litigation after there had been substantial motions practice and discovery.); *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d

756, 760 (9th Cir. 2002) (Plaintiff filed suit against defendant rather than filing the arbitration fee and demanded a jury trial and then subsequently invoked arbitration.).

Although the 2015 state court case and the present case both involve Ziebell and AMEX and relate to the same account, they are not the same proceedings. In state court, AMEX filed a collection suit against Ziebell for failure to pay off his account. In the current suit, Ziebell sued AMEX under the Fair Credit Reporting Act for failing to correct an error in his credit reports. In short, the collection suit and this case involve different plaintiffs, operative facts, and damages. Consequently, the collection suit in no way constitutes a waiver of its right to enforce the Arbitration Provision in these proceedings. *Cf. Lindsley v. DaimlerChrysler Fin. Serv. Americas, LLC*, No. 08-1466, 2009 WL 383616, at *3 (D. Minn. Feb. 11, 2009) (prior repossession of vehicle and attempts to collect by threatening litigation did not constitute waiver of defendant's right to arbitrate later suit by customer).

### III. Enforceability

Finally, Ziebell asserts that the one-sided Arbitration Provision is unenforceable because it is unconscionable. Ziebell contends that the Agreement only allows AMEX and not the cardmember to use the courts. This is inaccurate. The Arbitration Provision is a mutual right of each party: "Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision. . . ." Herr Decl., ECF No. 39, Ex. 1 at 3. Therefore, the Court rejects this argument.

## CONCLUSION

After reviewing the evidence and resolving all factual disputes in Ziebell's favor, the Court concludes that no genuine issue of fact exists under Utah law as to whether Ziebell entered into an agreement with AMEX. Moreover, the Court finds that AMEX has not waived its right to arbitrate and the arbitration agreement is enforceable. For these reasons, the Court grants AMEX's motion to compel arbitration. Ziebell's claims against Defendants Experian and Equifax, however, will remain pending before this Court.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion to Compel Arbitration and Stay Proceedings [ECF No. 36] is GRANTED.

2. This action is STAYED pending the completion of the arbitration.

Dated: January 24, 2019

        Joan N. Ericksen
        JOAN N. ERICKSEN
        United States District Judge